**SO ORDERED.**

**SIGNED this 07 day of November, 2012.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:                                                                                CASE NO.

RASHONDIA L. YOUNG,                                                11-09267-8-SWH


            DEBTOR


**ORDER ALLOWING MOTION TO VALUE COLLATERAL**
**AND DETERMINING STATUS OF CLAIM**

Pending before the court is the motion of the chapter 13 debtor, Rashondia L. Young, to

value the debtor's residence and to determine the status of a lien against the debtor's property held

by the Bison Court Homeowners Association, Inc., which the debtor contends should be deemed

unsecured pursuant to § 506 of the Bankruptcy Code.  A hearing was held in Raleigh, North

Carolina, on August 22, 2012.  For the reasons that follow, the court will allow the debtor's motion.

In December 2007, the debtor purchased a home located at 3630 Bison Hill Lane in the

Bison Court residential community in Raleigh, North Carolina.  She became delinquent in her

payments to the Bison Court Homeowners Association ("BCHA"), which subsequently filed a claim

of lien against her property in the amount of $1,095.73 on October 10, 2011.  The debtor filed a

petition under chapter 13 of the Bankruptcy Code on December 7, 2011.  The amount owed to

BCHA as of the petition date was $1,391.90.

The petition states that Bank of America holds a first deed of trust on the debtor's residence

in the amount of $113,604.69.  The debtor maintains (and BCHA does not contest) that the fair

market value of her residence is $110,000.  Accordingly, she argues, "[p]ursuant to § 506 of the

Bankruptcy Code and In re Kidd, 161 B.R. 769 (Bankr. E.D.N.C.1993), the lien of BCHA secured

by a claim of lien is an unsecured claim."  Debtor's Mot. to Value Collateral and Determine Status

of Claim at p. 1.

In response, BCHA acknowledges that the debtor's pre-petition *personal* obligations may

be treated as an unsecured claim and discharged in the bankruptcy; however, BCHA maintains that

the assessment obligation is "a charge on the Property, and, upon filing of a claim of lien with the

Office of the Clerk of Superior Court, is a 'continuing lien upon the Lot against which each

assessment is made.'" BCHA Response to Motion to Value Collateral at p. 2 ¶ 4.  More specifically,

BCHA argues that the lien obligation created by the association's Declaration and by the filed Claim

of Lien for the debtor's pre-petition obligations "runs with the land," is not dischargeable, and will

remain a charge against the land unless paid.  Id. at p. 3 ¶ 7.

In a memorandum handed up to the court at the hearing, BCHA took its argument a bit

farther:

> The Association contends that the charges on the Lots provided for under the
> terms of the Declaration are not "debts" within the meaning of 11 U.S.C.A.
> § 101(12) because Debtor has no "liability on a claim", and the Association has no
> "right to payment" from the Debtor.  11 U.S.C.A. § 101(5) (West 1993).  Therefore,
> since a discharge in bankruptcy only relieves the debtor of "personal liability for all
> pre-petition debts", . . . the discharge does not affect the lien on the Lot.

> Debtor's personal liability may be discharged, because it is a "debt" within the meaning of  11 U.S.C.A. § 101(12), but the charge on the land is not, and is unaffected by the discharge.  Further the charge on the land is not security for a "claim" and is not subject to being stripped under 11 U.S.C.A. § 1322(b).

BCHA Mem. in Response to Mot. to Value Collateral and Determine Status of Claim at 6-7.  There may be subtleties to this argument that escape the court, but BCHA appears to be arguing that its lien exists apropos of nothing in that it does not secure the debtor's personal liability (the "debt"), and is instead a wholly independent corollary to the personal debt.

In BCHA's view, its lien "runs with the land" and is thus removed from the generally applicable provisions of §  506 of the Bankruptcy Code.  The Declaration of Covenants, Conditions and Restrictions for Bison Court, upon which BCHA relies as the source of the unique nature of the obligation to the association, provides as follows in Article V, Section 1:

> Creation of the Lien and Personal Obligation of Assessments.  Each Owner of any Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association [certain assessments which,] together with interest, late charges, costs and reasonable attorney's fees, shall be a charge on the Lots and, upon filing of a claim of lien in the office of the Clerk of Superior Court of Wake County in the manner provided in 47F-3-116(g) of the Act, shall be a continuing lien upon the Lot against which each such assessment is made.  Each such assessment, together with interest, late charges, costs and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such Lot at the time when the assessment fell due.  The personal obligation for the delinquent assessments shall not pass to an Owner's successors in title unless expressly assumed by them.

Declaration of Covenants, Conditions and Restrictions for Bison Court at pp. 6-7.  In BCHA's view, pursuant to this language, the debtor's personal obligation to pay the pre-petition homeowners' dues may be discharged in bankruptcy; however, the lien *securing* that obligation is attached to the lot itself and is, accordingly, a separate and independent obligation that may *not* be discharged in bankruptcy.

The court cannot agree.  There is nothing unique about the BCHA homeowners' association lien that could exempt it from the general operation of applicable state statutes and the Bankruptcy Code.  See Haywood, 2008 WL 5146637 *1 (Bankr. E.D.N.C. 2008), aff'd sub nom, Widewaters Village Community Ass'n, Inc. v. Haywood, 2010 WL 8752024 (E.D.N.C. 2010), aff'd per curiam, 450 Fed. Appx. 238 (4th Cir. 2011).  The lien *does*, in fact, secure the debtor's debt to BCHA and is to be construed much like a mortgage.  This is consistent with state statutes and is made obvious by the lien itself, which was appended to BCHA's response to the debtor's motion:  The filed claim of lien provides that  "if the lien is not paid, the Homeowners Association may proceed with foreclosure against your property in like manner as a mortgage under North Carolina law," and then cites both the declaration of covenants applicable to the community and N.C.G.S. § 47F-3-116.  The court believes this matter is wholly within the scope of, and is thus controlled by, the rule articulated in In re Kidd, 161 B.R. 769 (Bankr. E.D.N.C. 1993).

In Kidd, the debtor owned a home encumbered by two mortgages, and the amount of the first mortgage exceeded the value of the home.  This left the second mortgage wholly, as opposed to partially, unsecured, and thus subject to avoidance under § 506(d).  Kidd, 161 B.R. at 770.  When a creditor holds a claim that is *not* secured, the court explained,  "the prohibition against modifying the lien on the residence does not prevent the avoidance of the lien under § 506(d)."  Id. at 770-71.  Section 506(d) will, in that scenario, operate to render the lien void.

The argument that a lien imposed by a homeowners' association is entitled treatment that differs from that given to any other lien also has been addressed in this district, and determined – decisively – against BCHA.  In In re Haywood, 2008 WL 5146637 (Bankr. E.D.N.C. 2008), a homeowners association objected to the stripping of its lien pursuant to the rationale set out in Kidd,

4

and argued that the debtors "should be estopped from avoiding the lien because they continue to reside in the property and receive the benefits of the association." Haywood, 2008 WL 5146637 *1. Rejecting the estoppel argument and placing the lien firmly in the category of a "claim," the bankruptcy court wrote:

> The court does not find any basis to treat a homeowners' association lien any differently than any other lien, nor is it persuaded by the creditor's estoppel argument. If the property were liquidated at foreclosure, this claim would not be paid. Any policy considerations, such as the receipt of the association benefits while the debtors remain on the property, are resolved by the treatment of this claim as an unsecured priority claim going forward. The debtors agree that even if the claim is not secured, the homeowners' association must be paid postpetition.

Haywood, 2008 WL 5146637 at *1. "The statutes determine the lien priorities," the court explained, "and the unilateral declarations of a homeowners' association do not supersede the statutes." Id. at *2.

The unusual aspect of BCHA's argument is that in its effort to separate out the lien and the debt that gave rise to it, BCHA has intertwined the legal arguments pertaining to discharge of the debt with those relevant to stripdown of the lien. Although the bankruptcy court did not discuss it, a relatively similar argument was put forth on appeal by the association in Haywood, which argued that the covenants pertaining to a debtor's community could "run with the land" and, because of this "estoppel by covenant," survive discharge. Haywood, 2010 WL 8752024 at *6. The district court gave that argument short shrift, concluding that the association's reliance on an 1855 Supreme Court case which construed the Bankruptcy Act of 1841 was "misplaced." Id. (citations omitted). "Under the chapter 13 of the current Bankruptcy Code," the district court wrote, "the debtor *does* have the right to strip the lien of a holder of an unsecured claim." Id. at *7.

right

In sum, discharge and stripdown are two wholly distinct things.  The bottom line is that if, as in this case, a lien is wholly unsecured as of the petition date, it may be stripped off.  It is, however, *only* that *pre-petition* lien that is stripped off upon discharge, not BCHA's entitlement to subsequently assert any post-petition lien rights that may accrue.  See, e.g., In re Guillebeaux, 361 B.R. 87 (Bankr. M.D.N.C. 2007) (discussing In re Rosenfeld, 23 F.3d 833, 836-37 (4th Cir. 1994) and the extent to which homeowners' association assessments are dischargeable).  This court will, for the foregoing reasons, allow the debtor's motion to avoid the BCHA lien.

## CONCLUSION

The debtor's motion to value collateral and determine status of claim is **ALLOWED**.  The value of the debtor's residence is $110,000 and, consequently, the claim of BCHA is an unsecured claim pursuant to § 506(d), and the Claim of Lien recorded by BCHA upon the debtor's residence (case number 11M6959) is wholly unsecured.  It is further **ORDERED** that BCHA must cancel the claim of lien upon the debtor's completion of her chapter 13 plan and her receipt of a discharge in this chapter 13 case.

**SO ORDERED**.

## END OF DOCUMENT